USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/8/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Timothy Johnson,

              Petitioner,

–v–

Christopher Miller,

              Respondent.

19-cv-516 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

Timothy Johnson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his convictions by a jury for first-degree manslaughter and two counts of criminal possession of a weapon, for which he was sentenced by a New York state court. Magistrate Judge Robert W. Lehrburger recommended that the Court deny Johnson's petition. For the reasons that follow, the Court adopts in full Judge Lehrburger's report and recommendation and therefore denies Johnson's petition.

## I. Background

### A. Factual background

The Court presumes the parties' familiarity with the facts of this case, which are summarized in greater detail in Judge Lehrburger's report and recommendation. Report and Recommendation ("R&R") at 1–19, Dkt. No. 20. On February 6, 2010, at approximately 4:30 a.m., officers of the New York Police Department responded to an anonymous 911 phone call by Richard Davis. *Id.* at 2. They found Kamal Doughty shot six times on the front steps of 1233 Union Avenue in Bronx County, New York. *Id.* He was pronounced dead from homicide

1

approximately a half hour later.  *Id.*  Davis, a close acquaintance of Johnson, initially denied knowledge of the shooting.  *Id.*  But two days later, on February 8, 2010, Davis made two statements to police in which he stated that "he had seen Johnson threaten to kill Doughty, load a handgun, shoot Doughty, and then flee the murder scene."  *Id.* at 2–4.  On March 11, 2010, a grand jury indicted Johnson on charges of second-degree murder, first-degree manslaughter, and two counts of second-degree criminal possession of a weapon.  *Id.* at 6.

Davis's testimony, which spanned three days of trial, formed the crux of the State's case against Johnson.  *Id.* at 4.  During his first day of testimony, Davis explained that Johnson, who sold "dime bags" of crack, shot Doughty, who sold "nickel bags" of crack, because of a dispute over territory.  *Id.* at 4–6.  Davis sold crack for Johnson and often purchased crack for his personal use.  *Id.* at 5.  He testified that prior to the shooting, he saw Johnson and Doughty in a nearby bodega arguing loudly over Doughty's sales on the same block as Johnson.  *Id.*  After, Davis testified, Johnson told Davis, "I am going to kill this mother f * * * er because he disrespected me, I told him don't come on my block and he is still on my block selling them nickels."  Tr. at 86, Dkt. No. 12.  Davis then saw Johnson retrieve a loaded handgun and repeat the threat.  R&R at 5–6.  Davis returned to his apartment and, from his window, saw Johnson shoot Doughty, after which he called 911.  *Id.* at 6; *see* Tr. at 112 (responding "[a] hundred percent" when asked "how certain" he was that he saw Johnson shooting).

But during the second day of testifying, "Davis became increasingly upset and agitated, culminating in his attempting to leave the courthouse and contradicting much of the incriminating testimony that he gave on the first day."  R&R at 7.  For example, Davis denied being present at the bodega the morning of February 6, 2010, denied making any statements to police, and denied seeing Johnson shoot Doughty.  *Id.* at 7–9.  Later, Davis admitted to speaking

to the police but claimed he did so only under pressure. *Id.* at 9–10. Still further, Davis stated that Doughty was shot at "about nine o'clock" at night rather than at 4:00 a.m. *Id.* at 10. Davis made further statements, this time outside the presence of the jury, that exculpated Johnson and that suggested he was under the influence of narcotics at the time he called 911. *Id.* at 10–11.

After his second day, Davis refused to return and had to be arrested to appear for his third day of testimony. *Id.* at 11. He again stated that he was unsure what time the shooting occurred, and that Johnson may not have been the shooter. *Id.* The State impeached Davis by prior inconsistent statement with his grand jury testimony, in which he stated that he saw Johnson shoot Doughty on February 6, 2010. *Id.*; see also *id.* at 12–15. On cross-examination, Davis expressed his anger at the State for making him testify for such an extended period of time. *Id.* at 11.

In addition to Davis's testimony, the State presented Davis's 911 call, testimony of the police officer that found Doughty's body, bullets recovered from the scene, and records of eight calls made from Johnson's cell phone from 4:00 a.m. and 4:30 a.m. on February 6, 2010, all made through the same cell tower near to the shooting. *Id.* at 12. The State also presented that "Doughty had on his person $692 in cash, 107 Ziplock bags of crack, and five Ziplock bags of cocaine when he was killed." *Id.*

After the State impeached Davis using his grand jury testimony, the court gave the jury a limiting instruction to consider the statements to "make a determination as to credibility" of the witness. *Id.* at 15. The court made a similar instruction as part of the final jury charge, this time further clarifying that the testimony "is not proof of what happened." *Id.* The State in its summation twice mentioned Davis's grand jury testimony in addressing Davis's memory of the shooting. *Id.* at 16.

The jury deliberated for eight days. *Id.* at 17. During that time, it requested, among other evidence, to be read back all three days of Davis's testimony. *Id.* The jury on April 30, 2013, found Johnson guilty of first-degree manslaughter and the two counts of second-degree criminal possession of a weapon, and found him not guilty of second-degree murder. *Id.* at 6; Tr. at 495. The court on August 2, 2013, sentenced him to 20 years' imprisonment. R&R at 7.

Johnson appealed his conviction on August 5, 2016. *Id.* at 18. The appellate court affirmed Johnson's conviction, rejecting his claims (1) that the evidence was legally insufficient to support a guilty verdict; (2) that the verdict was against the weight of evidence; (3) that the court impermissibly permitted the State to impeach its own witness; and (4) that the State's references to the grand jury testimony in summation were improper. *People v. Johnson*, 49 N.Y.S.3d 400, 401–02 (N.Y. App. Div. 2017). The New York Court of Appeals summarily denied Johnson's appeal. *People v. Johnson*, 89 N.E.3d 1263 (N.Y. 2017).

### B. Procedural history

On January 17, 2019, Johnson filed a motion for a writ of habeas corpus under 28 U.S.C. § 2254. Petition, Dkt. No. 2. The Court referred Johnson's petition to the Honorable Robert W. Lehrburger, U.S. Magistrate Judge, for a report and recommendation pursuant to 28 U.S.C. § 636. Dkt. No. 8. The State filed an opposition on May 21, 2019. Weiss Decl., Dkt. No. 12. Johnson filed a reply on August 27, 2019. Dkt. No. 19. Judge Lehrburger issued his report on June 9, 2020, which rejected the State's threshold arguments for denying Johnson's petition but ultimately recommended that the Court deny Johnson's petition. R&R at 22–30, 48–49. Johnson filed objections on August 18, 2020. Objections, Dkt. No. 24.

### II. Legal standard

A court may "designate a magistrate judge to submit to a judge of the court proposed

findings of fact and recommendations for the disposition" of certain motions, including applications for postconviction relief.  28 U.S.C. § 636(b)(1)(B).  A party to the action may file objections to the proposed findings and recommendations.  *Id.* § 636(b)(1)(C).  If a party has made specific objections to a magistrate judge's recommendation, the court reviews them de novo.  Fed. R. Civ. P. 72(b)(3).  Where a party does not object, or simply makes "conclusory or general objections," the district court will review for clear error.  *Amadasu v. Ngai*, No. 05-CV-2585 (RRM), 2012 WL 3930386, at *3 (E.D.N.Y. Sept. 9, 2012) (collecting cases).  Under this standard, the Court will adopt portions of the report to which no objections were made unless they are "facially erroneous."  *Bryant v. N.Y. State Dep't of Corr. Servs.*, 146 F. Supp. 2d 422, 424–25 (S.D.N.Y. 2001); *see also DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009) ("A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, [ ] left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)).

Objections made by a pro se party are "generally accorded leniency and should be construed to raise the strongest arguments that they suggest." *Machicote v. Ercole*, No. 06-cv-13320 (DAB), 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (quotation omitted).  But "even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." *Pinkney v. Progressive Home Health Servs.*, 06-cv-5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

Under 28 U.S.C. § 2254(d), a federal court may grant relief on a claim adjudicated by a state court on the merits only if the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light

5

of the evidence presented in the State court proceeding." "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (cleaned up). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. After making the showing required by § 2254(d), a state prisoner must also prove a constitutional violation. *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013).

**III.    Discussion**

Johnson's petition raises two grounds for relief. First, he argues that the evidence was legally insufficient to support the jury's verdict in violation of the Due Process Clause. Petition at 4; R&R at 26. Second, he argues that he was denied a fair trial. Petition at 5–6. This ground contains within it three distinct claims: (i) that the trial court improperly permitted the State to impeach its own witness, (ii) that the court's limiting instruction was inadequate to prevent the jury's impermissible consideration of Davis's grand jury testimony, and (iii) that the State improperly used Davis's grand jury testimony in summation to bolster Davis's testimony. *Id.* The report and recommendation rejected each of these claims. Johnson contends in his objections that Judge Lehrburger erred in his consideration of all claims raised in the petition. The Court considers each of Johnson's objections in turn and reviews the report and recommendation's conclusions de novo.

**A. Sufficiency-of-the-evidence claim**

The report and recommendation concluded that Davis's testimony was adequate evidence to support the jury's verdict on all three convictions, emphasizing that Davis's credibility was a question "solely for the jury." R&R at 34 & n.16 (collecting cases). Judge Lehrburger further noted that Doughty's testimony was corroborated by, among other evidence, the 911 call, the location of Doughty's body and bullets, Johnson's cell phone records, and the items found on Doughty's body. *Id.* at 34–35. That evidence, the report concluded, permitted the jury to conclude that, "[w]ith intent to cause serious physical injury to another person, he cause[d] the death of such person or of a third person." *Id.* at 33 (quoting N.Y. Penal Law § 125.20(1)). As to Johnson's two firearm-possession charges, the report similarly concluded that Davis's testimony that he saw Johnson possess a loaded handgun, threaten to shoot Doughty with it, and subsequently shoot Doughty, was sufficient to support both convictions. *Id.* at 35–36.

Johnson argues that these conclusions were erroneous. Objections at 3–9. First, Johnson argues that Davis's testimony did not show Johnson's intent to "cause serious physical injury" as required for first-degree manslaughter but could only support a finding of Johnson's "intent to 'kill.'" Objections at 3–5. This objection is without merit. "It is undisputed that manslaughter in the first degree is a lesser included offense of second-degree murder." *People v. Hull*, 54 N.E.3d 1155, 1157 (N.Y. 2016). The jury in convicting Johnson of first-degree manslaughter but acquitting him of second-degree murder could have reasonably concluded, taking account of Johnson's anger and desire to "shut . . . down" Doughty's drug operation, R&R at 6, that Johnson intended to inflict serious physical injury, which includes "creat[ing] a substantial risk of death," N.Y. Penal Law § 10.00(10), even if he did not intend to kill, *Hull*, 54 N.E.3d at 1156–57. More importantly, the Court cannot conclude that the New York appellate court was "unreasonable" in its application of clearly established federal law. *Harrington*, 562 U.S. at 102.

7

Second, Johnson renews his argument that Davis's testimony was unreliable, contradictory, and not meaningfully corroborated by other evidence such that his testimony could not support a reasonable jury's guilty verdict. Objections at 5–8. But the report and recommendation correctly concluded that determining Davis's credibility must be left to the jury. R&R at 34. A reasonable jury could have concluded that the story recounted by Davis in his first day of testimony, which was corroborated by two statements to police and testimony to the grand jury, was credible but that his contradictory statements on days two and three were not. *See United States v. Anderson*, 747 F.3d 51, 63 (2d Cir. 2014).

Third, Johnson argues that there was insufficient evidence to support the two firearm-possession convictions because although Davis originally testified that Johnson held a firearm, waved it around, and then shot Doughty, Davis later testified that Johnson may not have been the shooter at all. Objections at 8–9. This objection is another request to second-guess the jury's credibility determination. The report and recommendation properly refused to do so. R&R at 34–36; *see United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993).

The Court agrees with the report and recommendation that the state court did not unreasonably apply clearly established federal law in denying Johnson's sufficiency-of-the-evidence claim.

### B. Fair-trial claims

Johnson next objects to the report and recommendation's denial of his three fair-trial claims.

### 1. Impeachment

The report and recommendation concluded, as did the state appellate court, that the trial court properly permitted the State to impeach its own witness. R&R at 36–38. As it explained,

New York law permits a party in a criminal case to impeach its own witness using prior sworn testimony when the witness "gives testimony upon a material issue of the case which tends to disprove the position of such party." N.Y. Crim. Proc. Law § 60.35(1). Here, Davis's first day of testimony supported the State's case, but he wholly contradicted that testimony on his second and third days of testifying. R&R at 37. And, as the report and recommendation notes, the trial record makes clear that the State did not expect Davis to change his testimony. *Id.* at 37–38.

Johnson raises several objections to this conclusion but none are persuasive. First, he argues that Davis's testimony did *not* tend to disprove the prosecution's case because Davis stated only that he did not remember certain events. Objections at 9–11. This objection is inconsistent with the record, in which Davis stated, contrary to his prior testimony, that Johnson may not have been the shooter, that the shooting occurred at 9:00 p.m., and that Davis did not see Johnson shoot Doughty, among other material contradictions. R&R at 10–11. These statements all tended to disprove the State's case, which relied upon Davis's eye-witness testimony.

Second, Johnson states that Davis's grand jury testimony was not proper impeachment material because it was not a "signed or sworn statement." Objections at 10. This assertion is incorrect. Tr. at 238 ("Q. When you were in the grand jury you were under oath, right? A. Yes."); N.Y. Crim. Proc. Law § 190.25 (requiring grand jury witnesses be sworn in).

Third, Johnson argues that Davis's grand jury testimony may only have been read to him "quietly" so as to refresh his memory. Objections at 10. But, as explained, New York law permits the use of prior testimony not only to refresh a witness's memory but also to impeach so that the jury may assess the witness's credibility. N.Y. Crim. Proc. Law § 60.35.

Fourth, Johnson argues that the State knew Davis would be a "recalcitrant" witness because he had to be arrested to testify. Objections at 11. Therefore, he concludes, the State

9

"intentionally" used Davis as a witness "for the sole purpose of impeaching him" to "circumvent the rules" on bringing in his grand jury testimony. *Id.* But Davis was arrested only before his third day of testimony, after he had provided significant contradictory testimony on his second day. R&R at 7. Johnson also points to the statements that Davis made outside the presence of the jury as evidence of the State's true intentions. Objections at 11. Again, these statements came *after* Davis had provided consistent testimony on his first day and then began to contradict himself on his second day of testimony. R&R at 8.

The Court therefore adopts the report and recommendation's denial of Johnson's impeachment claim.

## 2. Limiting instructions

The report and recommendation denied Johnson's limiting-instruction claim on two independent bases. First, the claim is procedurally barred because Johnson's counsel did not object to the instruction at the time. R&R at 31–33. The state appellate court denied review of the claim on that ground. *Johnson*, 49 N.Y.S.3d at 402 ("Defendant's challenge . . . is unpreserved, and we decline to review it in the interest of justice."). Second, the report and recommendation denied the claim on the merits, finding that the "trial court gave correct but incomplete limiting instructions at the time the prior statements were introduced . . . and gave the complete recommended model instructions in the jury's final charge." R&R at 42.

Johnson first objects to the report's procedural-default finding. He argues first that trial counsel's ineffectiveness established cause and prejudice for the default. Objections at 13–14 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000)). Raising this excuse to default requires that Johnson show he received ineffective assistance of counsel that "is *itself* an independent constitutional claim." *Edwards*, 529 U.S. at 451; *see United States v. Brown*, 623

F.3d 104, 112 (2d Cir. 2010) (stating that an ineffective-assistance claim requires a defendant to show both that counsel acted objectively unreasonably and that the deficiency prejudiced the outcome). That Johnson cannot do. The Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Deference is even higher when considering counsel's tactical decisions whether to object at trial. *See Ambers v. Colvin*, No. 16-CV-5326 (KAM), 2019 WL 3767036, at *7 (E.D.N.Y. Aug. 9, 2019). The Court concludes that trial counsel's behavior did not amount to constitutionally ineffective assistance in failing to object to the trial court's first limiting instruction.

Second, Johnson argues that the state appellate court did not actually rely on procedural default in denying his claim. Objections at 14 (citing *Reed v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992)). But the court expressly found the claim to be "unpreserved" and so "decline[d] to review it." *Johnson*, 49 N.Y.S.3d at 402. It then also rejected Johnson's claims on the merits as an "alternate holding." *Id.* The Second Circuit has held that posture bars a federal court's later review of the claim. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

Third, Johnson argues he has proven his "actual innocence," which excuses default. Objections at 14 (citing *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002)). But Johnson's claims, accepted as true, do not satisfy the high standard for a factual-innocence claim. *See Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). Most notably, Johnson does not purport to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). And, as already explained, Johnson's sufficiency-of-the-evidence claim does not demonstrate his actual innocence.

The Court therefore adopts the report's conclusion that Johnson's limiting-instruction claim is procedurally defaulted.

Even if the Court proceeded to the merits, it would further agree that Johnson's limiting-instruction claim is unpersuasive. The report and recommendation found that the trial court's instruction given immediately after the impeachment evidence was introduced was "accurate but incomplete" because it instructed the jury to use the evidence to assess credibility but "did not affirmatively instruct the jury that the evidence could not be used as proof of what actually happened." R&R at 40 (citing N.Y. Crim. Proc. Law § 60.35(2)).

Johnson argues that "an incomplete instruction is a misstatement of the law" and so "false." Objections at 15. The jury was therefore likely to have considered the impeachment evidence as proof of what happened, denying Johnson a fair trial. *Id.* at 16. The Court agrees with the report and recommendation's conclusions. First, Johnson was not prejudiced because the jury received the full instruction in the final charge. R&R at 41. Contrary to Johnson's claims, an initial "incomplete instruction" is meaningfully different from a "misstatement of the law," and much less likely to cause prejudice. *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Second, Johnson has not identified case law, nor is the Court aware of any, in which a conviction was reversed because of a court's incomplete instruction of this kind. *Id.* at 41–42. And even if Johnson showed that the trial court violated New York law—which he has not—that would still not show that the appellate court unreasonably applied federal law in concluding that Johnson received a fair trial.

The Court therefore denies Johnson's limiting-instruction claim both because it is procedurally defaulted and, independently, because it fails on the merits.

3. **The State's summation**

The report and recommendation rejected Johnson's claim based on the State's summation, during which the State referred back to Davis's grand jury testimony, stating, for example, that it was "very specific" and given "under oath" with "no pressure whatsoever to do anything other than tell the truth." *Id.* at 42–43 (quoting Tr. at 395–96). This analysis is guided by the Second Circuit's "three-part test" for prosecutorial-misconduct claims, which considers "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002). Judge Lehrburger in his report explained that, taken in context, the State properly used the grand jury testimony to corroborate Davis's trial testimony, not as direct evidence. R&R at 44–45. And, the report continued, any harm from the summation was mitigated by the limiting instruction and unlikely to have altered the outcome. *Id.* at 45–48.

Johnson again raises several objections. First, he argues that the summation's reference to the grand jury testimony being given under oath "implies that was [Davis's] only true testimony despite his inconsistencies." Objections at 17. The Court finds no basis for this objection. Taken as a whole, the State in summation referred to the grand jury testimony only to corroborate the contents of Davis's first day of testimony and did so only after first recounting Davis's trial testimony. *See* Tr. at 385, 389, 395–96.

Second, Johnson argues that the grand jury testimony was not truly corroborative because the other evidence referred to by the State in summation—including the 911 call, the location of Doughty's body, and the cell phone records—did not tend to prove Johnson's guilt. Objections at 17–18. But the Court agrees with the report and recommendation that each of these other pieces of evidence, taken with Davis's testimony, could support a finding of Johnson's guilt beyond a reasonable doubt. R&R at 44–45.

13

Third, Johnson argued that the State's suggestion that Davis changed his testimony out of fear of Johnson's ostensible associates in the courtroom was improper. Objection at 18–19. Johnson did not raise this argument to Judge Lehrburger and the Court therefore deems it forfeited. *See United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). In any event, the objection lacks merit. Davis was asked on re-direct examination if there was "any one in the courtroom on Monday that was making [him] uncomfortable." Tr. at 245. He responded that Johnson's "whole crew was there, they just come to see what I looked like again. . . . I got everybody's name on paper in case anything happens to me or my kids." *Id.* In summation, the State referred back to this testimony as one of several reasons why Davis changed his testimony. Tr. at 390 ("When Mr. Davis talks about the team and he's afraid of them, he's in a position to know about that. . . . It shouldn't be surprising when he . . . get[s] scared about what he is doing."). This situation is distinguishable from the case law upon which Johnson relies, in which a prosecutor personally vouched for a witness's truthfulness by referring to "a mysterious third person" to explain the witness's fear of the defendant. *United States v. Modica*, 663 F.2d 1173, 1179 (2d Cir. 1981).

Fourth, Johnson argues that the limiting instruction was insufficient to resolve any prejudice from the State's summation because a complete instruction was not given after the impeachment evidence was introduced. Objections at 19. But the full instruction was provided during the final jury charge, which was more proximate in time to the State's summation. R&R at 44–45. The Court therefore agrees that any harm was adequately mitigated.

Fifth, Johnson argues that the grand jury testimony was likely to have impermissibly affected the jury's verdict because the testimony was included in the portions of Davis's testimony read back to the jury during its lengthy deliberation. Objections at 19–20. As the

14

report and recommendation explains, however, the jury asked for "many pieces of evidence during deliberation," including crime scene photographs, the 911 call, surveillance video, Johnson's cell phone records, Davis's statements to police, and portions of all three days of Davis's testimony. R&R at 46–47. The Court therefore agrees that even if the State's summation included misconduct, and even if the limiting instruction did not cure it, the State's reference to the grand jury testimony in summation still likely did not materially affect Johnson's conviction.[1]

The Court therefore finds that none of Johnson's claims demonstrate that he did not receive a fair trial. Even if the Court were persuaded by one of Johnson's claims, he has further not shown that the state appellate court's decision that affirmed his conviction "involved an unreasonable application of[ ] clearly established Federal law" as required by 28 U.S.C. § 2254(d)(1).

## IV.   Conclusion

Finding no error in the report and recommendation, the Court hereby ORDERS that the report and recommendation is adopted in full, and Johnson's objections are overruled. The Court therefore DENIES Johnson's § 2254 motion.

Because Johnson has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. Additionally, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, so *in forma pauperis* status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

---

[1] Because the Court agrees with the report and recommendation that none of Johnson's claims show error, it need not address Johnson's arguments as to harmless error. Objections at 20–22.

The Clerk of Court is respectfully directed to close the case.

The Clerk's office is further asked to mail a copy of this Opinion and Order to Mr. Johnson and note the mailing on the public docket.

SO ORDERED.

Dated: October 8, 2021
   New York, New York

_____
ALISON J. NATHAN
United States District Judge